UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES RALPH, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| v. ) | Case No. 4:20-cv-00785-SRC |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant(s). ) | |

## Memorandum and Order

James Ralph requests judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying hiss application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*. The Court affirms the Commissioner's decision.

**I.   Procedural history**

Ralph filed a Title XVI application for supplemental security income on July 20, 2017. Tr. 26, 168–173.  The Social Security Administration initially denied his application on October 6, 2017.  Tr. 26, 124–134.  Ralph asked for a hearing before an ALJ on November 20, 2017, Tr. 26, 147–159, and the ALJ held a hearing on March 14, 2019.  Tr. 26, 94–116.  The ALJ denied Ralph's application in a decision dated May 24, 2019.  Tr. 26–35.  On April 22, 2020, the Appeals Council denied Ralph's request for review.  Tr. 1–6.  As such, the ALJ's decision stands as the final decision of the Commissioner.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Kilolo Kijakazi for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II.     Decision of the ALJ

The ALJ determined that Ralph has not engaged in substantial gainful activity from the application date of July 20, 2017.  Tr. 28.  The ALJ found that Ralph has severe impairments of depression, anxiety, and post-traumatic-stress disorder.  *Id*.  The ALJ found that Ralph does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 29–30.

After considering the entire record, the ALJ determined that Ralph has the residual functional capacity to perform work at any exertional level, but he can only complete simple, routine tasks within minimal changes in job duties and job setting, and can occasionally interact with the general public, supervisors, and coworkers.  Tr. 30.

The ALJ found that Ralph has no past relevant work.  Tr. 33.  Ralph has at least a high school education and can communicate in English.  Tr. 34.  After considering Ralph's age, education, work experience, and RFC, the ALJ found that jobs exist in significant numbers in the national economy that Ralph can perform, including laundry worker, hand packager, and industrial sweeper.  Tr. 34.  Thus, the ALJ concluded that Ralph "was not under a disability."  Tr. 35.  Ralph appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

## III.    Legal standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to

2

do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* at § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe "impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir.

2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3) (emphasis added). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

4

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016).

## IV. Discussion

Ralph argues that the Court should remand because the ALJ failed to appropriately assess the persuasiveness of the medical opinions of John Harnett and Paul Nims and substantial evidence does not support the ALJ's RFC determination. Doc. 15.

### A. The ALJ appropriately weighed the medical opinions of Harnett and Nims

The Commissioner's regulations provide that, for claims filed on or after March 27, 2017, ALJs will not defer to or give any specific evidentiary weight, including controlling weight, to any medical opinion. *See* 20 C.F.R. § 416.920c(a) (2017). Instead, ALJs must evaluate the persuasiveness of medical opinions and prior administrative medical findings in light of several factors, the most important of which are supportability and consistency with the record. 20 C.F.R. § 416.920c(a)–(c) (2017). ALJs must explain how they considered the factors of

5

supportability and consistency in their decisions, but need not explain how they considered the other factors.  20 C.F.R. § 416.920c(b) (2017).

Harnett and Nims both opined that Ralph had marked interference with concentration, persistence and pace, that his overall pace of production would be 31% or more below average, and that he had moderate limitations with understanding, remembering, and applying information, and marked limitations with adapting and managing himself.  Tr. 613–616, 619–622.  They also opined that Ralph could not perform in proximity to coworkers without being distracted by them or without distracting them due to abnormal behavior, could not consistently perform for supervisors without exhibiting insubordinate behavior in response to supervision, and could not perform in a setting with any contact with the public.  Tr. 613–616, 619–622.  Finally, both Hartnett and Nims opined that Ralph would miss three or more days of work per month due to anxiety.  Tr. 32–33, 615, 621.

In assessing Harnett's and Nims's opinions, the ALJ found that "there is no support for the determination that the claimant's overall pace of production would be 31% or more below average."  Tr. 33.  Ralph argues that the ALJ failed to properly support this determination, particularly because all of Ralph's treatment providers opined that his pace of production would be 31% or more below average.  Doc. 15 at p. 4 (citing Tr. 8, 13, 613, 619).  However, the treatment providers reached this opinion by merely checking a box on a form with little-to-no elaboration, *see* Tr. 8, 13, 613, 619, and courts applying the new regulations have consistently found a medical opinion unsupported when the opinion stems from a checklist with minimal elaboration.  *Williams v. Saul*, No. 2:19-CV-88 RLW, 2021 WL 1222770, at *12 (E.D. Mo. Mar. 31, 2021), *Corwin v. Saul*, No. 20-CV-2003-LTS, 2021 WL 1593258, *12–13 (N.D. Iowa Mar. 8, 2021), *report and recommendation adopted*, No. C20-2003-LTS, 2021 WL 1224906 (N.D.

Iowa Mar. 31, 2021), *Weddington v. Saul*, No. 2:20-CV-00011-JJV, 2020 WL 4555667, at *3 (E.D. Ark. Aug. 6, 2020); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (affirming an ALJ's discounting of a physician's checklist-type opinion because it consisted of "three checklist forms, cite[d] no medical evidence, and provide[d] little to no elaboration"). Thus, the ALJ properly found that the opinions regarding Ralph's pace of production lacked support.

The ALJ also found that the opinions of Harnett and Nims were inconsistent with "other medical sources and nonmedical sources in the claim." 20 C.F.R. § 416.920c(c)(2) (2017); *see also* Tr. 33. For example, records from Ralph's mental-status examinations show him being engaging during conversation with good eye contact. Tr. 590, 602. The records also reflect that Ralph was pleasant and cooperative during the examinations, and showed that he could get along with others. Tr. 339–362, 590, 602. The medical opinions of both Harnett and Nims further conflict with Ralph's own description of his ability to perform his personal care, prepare his meals and household chores, go out alone and shop at grocery stores, and to utilize public transportation. Tr. 190–192, 594.

Ralph argues that the ALJ's determination that the medical opinions of Harnett and Nims were inconsistent with medical records and mental-status findings is itself not supported by the record because Ralph's activities of daily living were more limited than indicated by the ALJ and the mental-status examinations support more severe symptoms than appreciated by the ALJ. Doc. 15 at pp. 8–9. The records that Ralph cites in arguing that the ALJ improperly found Harnett's and Nims's opinions were inconsistent with the record only further confirm the ALJ's findings. *See id.* at pp. 4–5.

7

Specifically, Ralph argues that "the ALJ only identified a handful of findings and failed to include or discuss consistently documented anxiety both observed and reported[.]" *Id*. at p. 4 (citing 11, 16, 53, 80, 352, 354, 446, 457, 492, 496, 557, 558, 559, 561, 578, 589, 616, 622). But most of the records cited by Ralph, some of which were the same records cited by the ALJ, document Ralph's issues with anxiety and then note that, consistent with the ALJ's findings, that Ralph appeared alert, acceptably groomed, pleasant, cooperative, engaged during the interview with good eye contact, had coherent speech, had fair attention and concentration, and was logical and goal focused. *See e.g.*, Tr. 53, 80, 352, 446, 457, 492, 557, 559, 561, 590. Additionally, some of the other documents that Ralph cites in support are the opinions of Hartnett and Nims, Tr. 11, 16, 616, 622, which of course cannot be used to support an argument that their medical opinions were consistent with other medical evidence in the record. While some records cut against the ALJ's finding regarding consistency, *see e.g.*, Tr. 496 (documenting that Ralph was uncooperative during the visit), substantial evidence supports the ALJ's finding. *See* Tr. 53, 80, 190–191, 339–362, 446, 457, 492, 557, 559, 561, 590, 594, 602.

Ralph next argues that the ALJ also failed to properly consider the records "documenting . . . poor sleep causing the plaintiff to lack energy the next day[,]" and that he "reported that he suffers from days where he does not get out of bed at all and lacks motivation." Doc. 15 at p. 4 (citing 9–11, 352–353, 389, 456, 477, 547, 551, 557, 559, 561, 602, 616). First, Ralph once again cites the medical opinions of Harnett and Nims for support, Tr. 9–11, 616, and thus those records cannot be used to establish that the other medical evidence in the record is consistent with the two medical opinions at issue. Next, while the records reflect that Ralph reported trouble sleeping and a lack of motivation, they do not support Ralph's contention that medical professionals found that lack of sleep caused him to lack energy the next day. Ralph ignores the

8

distinction between how he self-reports his condition to his medical providers, and the objective findings of the medical providers stating that Ralph appeared adequately groomed, engaged with good eye contact, and cooperative.  *See Kirby*, 500 F.3d at 709 (holding that the ALJ was entitled to discount an opinion where the opinion was based largely on the claimant's subjective complaints rather than on objective medical evidence).

For example, at one mental-status examination, Ralph "endorsed poor sleep and appetite, low energy, crying spells, low self-esteem, amotivation, and anhedonia." Tr. 389.  But that record also reflects that Ralph possessed a relatively-normal mental status:

> He had spontaneous conversation and readily answered questions, but spoke softly and with a slight mumble. He displayed no signs of a thought disorder. He was alert and oriented to person, date, and day of the week. He was able to identify the current president of the United States and the last three Presidents, in order. He was able to spell the word "world" forward and backward, perform serial 3s from 40, and calculated basic math problems without difficulty. He was able to repeat four digits forward and three backward. He was able to recall two out of three words after a short delay with distraction. After a reminder and second short delay with distraction, the claimant was again able to recall only two out of three words. He provided correct interpretations for three out of three common proverbs and was able to tell me how three out of three pairs of words were similar.

Tr.  389–390.

Ralph also argues that the fact his medications were changed or adjusted at least eight times due to side effects or ineffectiveness supports that the medical opinions of Harnett and Nims are consistent with the mental-status examinations that the ALJ relied upon.  Doc. 15 at p. 5 (citing 352, 354, 537, 473, 602, 551, 560, 561).  A closer look at these "changes" in medication paints a different picture.  First, Ralph responded well to many of these changes or adjustments. For instance, Ralph's depression, and to a lesser extent, anxiety and post-traumatic-stress disorder responded well to an increased dose of Lexapro, Tr. 473, 537, even though that change was made after Ralph did not tolerate Effexor XR.  Tr. 473; *see also* Tr. 352 (noting that

9

although Ralph could not take Prazosin, his physician's preferred medication, due to side-effects, Seroquel significantly improved the problem). At other times, his dosage was increased to account for increased depression or anxiety when situational stressors were triggered, such as the anniversaries of family members' deaths. Tr. 354, 602; *see also Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (finding situational stressors not disabling); *Mitchell v. Sullivan*, 907 F.2d 843 (8th Cir. 1990) (same). Two other records cited by Ralph reflect that he did not take the prescribed dosage. Tr. 353, 561; *see also Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006) ("[A]n ALJ may properly consider the claimant's noncompliance with a treating physician's directions, including failing to take prescription medication[.]" (citations omitted)); *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000) (same). Thus, while the record contains evidence that Ralph's medications were ineffective or caused side effects and thus support the notion that he portrayed symptoms that called for medication changes, *see* Tr. 352, 354, 450, 452, 551, substantial evidence still supports the ALJ's finding. *See* Tr. 53, 80, 190–191, 339–362, 446, 457, 492, 557, 559, 561, 590, 594, 602.

      Lastly, Ralph argues that the ALJ erred by only considering the consistency and supportability factors, rather than also considering Ralph's "relationship with the providers or the length, frequency or the purpose of those relationships when determining the persuasiveness of the opinions." Tr. 15 at p. 10; *see also* 20 C.F.R. § 416.920c(c)(3)–(5). Yet, contrary to Ralph's argument, the regulations only required the ALJ to articulate how she considered the supportability and consistency factors. 20 C.F.R. § 416.920c(b)(2) (2017). The ALJ could have, but was "not required to, explain how [she] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision." *Id*. Therefore, in accordance with the

10

regulations, the ALJ stated how she considered the supportability and consistency factors and exercised her discretion to remain silent as to how she considered the remaining factors. 20 C.F.R. § 416.920c(b) (2017); Tr. 33.

Even if this Court found substantial medical evidence in the record supporting the medical opinions of both Harnett and Nims, it cannot remand simply because it "would have reached a different conclusion than the ALJ or because substantial evidence supports a contrary conclusion." *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (citing *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014)); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision."). Rather, this Court must affirm if the ALJ's finding "falls within the available zone of choice[.]" *Schouten v. Berryhill*, 685 F. App'x 500, 501 (8th Cir. 2017) (citation omitted). Here, for the reasons outlined above, the ALJ properly found that the medical opinions of Harnett and Nims lacked support and were inconsistent with the record, and substantial evidence supports the ALJ's finding. Because such a finding "falls within the available zone of choice," *Schouten*, 685 F. App'x at 501, the ALJ permissibly found the opinions not persuasive.

**B.     Substantial evidence supports the ALJ's RFC determination**

Ralph argues that the ALJ committed reversible error by "simply disregard[ing] all opinions by acceptable medical sources and substitut[ing] her own opinion of how [his] mental symptoms affect his functioning when formulating the RFC." Doc. 15 at p. 3. He also argues that the ALJ placed undue weight on his activities of daily living and mischaracterized the statements in the function report. *Id*. at p. 6. Ralph's arguments lack merit.

11

RFC is defined as the most a claimant can do despite his limitations, including both physical and mental limitations. 20 C.F.R. § 416.945(a). "The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Hensley v. Colvin*, 829 F.3d 926, 931–32 (8th Cir. 2016) (quoting *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013)). Here, the ALJ properly considered all the relevant evidence in reaching her RFC determination.

### 1. ALJ properly discounted Ralph's subjective complaints in forming his RFC

The ALJ began her RFC determination by assessing Ralph's subjective complaints. Tr. 30. In his testimony in front of the ALJ and in a statement he submitted as part of his application, Ralph alleged that "he has difficulty with leaving his house due to paranoia, depression, and anxiety." Tr. 31. Ralph also testified that he suffered from night terrors, causing day-time fatigue, and stated that he cries for no reason fours time a week. Tr. 31; *see also* Tr. 105–107, 111. He testified that his girlfriend does most of the household chores. Tr. 31; *see also* Tr. 108. He further alleged that his anxiety made it difficult for him to get along with authority figures and he has been fired for failure to get along with others. Tr. 31 (citing 194–195).

In analyzing a claimant's subjective complaints, the regulations instruct ALJs to consider the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the condition; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication; (6) any measures the claimant uses or has used to relieve his pain or other symptoms; and other factors concerning the claimant's functional restrictions. 20 C.F.R. § 416.929(3). Courts also consider the claimant's "relevant work history and the absence of objective medical evidence to support

12

the complaints." *Wildman*, 596 F.3d at 968 (citation omitted). The above factors stem from the Eighth Circuit's decision in *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). "While ALJs must acknowledge and consider these so-called *Polaski* factors before discounting a claimant's subjective complaints, [the Eighth Circuit] ha[s] held that ALJs need not explicitly discuss each *Polaski* factor. ALJs may discount claimants' complaints if there are inconsistencies in the record as a whole, and [courts] will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." *Wildman*, 596 F.3d at 968 (citations and internal quotations omitted).

      Here, the ALJ explicitly considered the *Polaski* factors, stating,

> In assessing the claimant's medically determinable impairments and their impact on the claimant's ability to perform work functions, the undersigned also considered the claimant's subjective allegations, giving careful consideration to all avenues presented that relate to such matters as:
>
> 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
> 2. precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
> 3. type, dosage, effectiveness, and adverse side-effects of any pain medications;
> 4. treatment, other than medication, for relief of pain;
> 5. functional restrictions; and
> 6. the claimant's daily activities.

Tr. 30; *see also* 20 C.F.R. § 416.929(3).

      The ALJ focused on Ralph's daily activities in assessing his subjective complaints. Tr. 31. In his function report submitted as part of his social-security application, Ralph denied having any problems with personal care. Tr. 31 (citing Tr. 190). Ralph also stated that he prepares meals for himself daily, he can "sweep and keep things clean[,]" goes out alone, grocery shops, can pay bills, count change, handle a savings account, and use a checkbook or money

13

order.  Tr. 31 (citing Tr. 191–192).  The ALJ found that Ralph's description of daily activities ran counter to his complaints of disabling symptoms and limitations.  Tr. 31.

Later in her opinion, the ALJ also found Ralph's statements about the intensity, persistence, and limiting effects of his symptoms inconsistent with the record.  Tr. 32.  As noted by the ALJ, Ralph has been able to minimize anxiety from his agoraphobia and utilize public transportation if he takes an anxiolytic prior to traveling, Tr. 32 (citing Tr. 390, 594).  The ALJ also concluded that Ralph's mental-status examinations demonstrate that he can get along with others because during the exams he was engaging during conversation with good eye contact, pleasant, and cooperative.  Tr. 32 (citing 339–362, 590, 602).

Ralph argues that the ALJ erred in discounting his subjective complaints based on descriptions of his daily activities because the ALJ failed to consider his ability to perform those activities over a period of time.  Doc. 15 at pp. 5-6.  Ralph cites *Reed v. Barnhart*, 399 F.3d 917 (8th Cir. 2005) for support, but that case has limited application.  In *Reed*, the ALJ found that the claimant's ability to perform certain daily tasks "to any degree [was] inconsistent with her allegations of constant, debilitating symptoms."  *Id*. at 923.  The Eighth Circuit explained that simply finding that the claimant can perform some daily activities "to any degree" does not render the claimant's allegations about being disabled inconsistent.  *Id*.  *Reed* further noted that "[a]lthough acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility, this court has repeatedly observed that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work."  *Id*. (citations and internal quotation marks omitted).

14

However, while the Eighth Circuit has continued to explain that "'the ability to do activities such as light housework and visiting with friends' alone are insufficient reason to discredit [the claimant's] subjective complaints[,]" it has also found that "the extent of physical activities, particularly when considered in conjunction with the medical record in th[e] case" can support discrediting subjective complaints. *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (citations omitted); *see also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (in addition considering her daily activities, "[t]he ALJ also considered other inconsistencies in the record as a whole which undermined Halverson's credibility"). Here, the ALJ properly considered the extent of Ralph's daily activities in conjunction with other medical evidence in the record in finding that his subjective complaints lacked support.

For example, despite his allegations that he suffers from anxiety from his agoraphobia, the record reflects that Ralph can minimize this anxiety and utilize public transportation if he takes an anxiolytic prior to traveling. Tr. 32 (citing Tr. 390, 594); *see also Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (conditions which can be controlled by treatment are not disabling); *Coleman v. Kijakazi,* No. 4:20-CV-411-SNLJ, 2021 WL 4281286, at *4 (E.D. Mo. Sept. 21, 2021) (calling into question the consistency of the plaintiff's claims because her conditions could be controlled by treatment). Ralph also alleged that he lacked the ability to get along with authority figures, but his mental-status examinations stating that he was engaging during conversation with good eye contact, pleasant, and cooperative show that he can get along with others. Tr. 32 (citing 339–362, 590, 602). And to the extent the ALJ may have overstated his daily activities, or failed to consider how often he engages in such activities, the record still supports that he "is generally able to care for himself." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008); *see also Halverson*, 600 F.3d at 932; Tr. 190–191, 339-64, 590, 594, 602.

15

In sum, the ALJ properly discounted Ralph's subjective complaints because she considered the *Polaski* factors and assessed the consistency of his complaints in conjunction with the medical records in the case. For the reasons stated above, the Court finds that the ALJ's credibility determination of Ralph's subjective complaints is "supported by good reasons and substantial evidence." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citing *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016)). Accordingly, the Court defers to the ALJ's assessment of Ralph's credibility. *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) ("This court will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence." (citation omitted)).

### 2. The ALJ properly considered all the relevant evidence in forming his RFC

Ralph argues that "the ALJ simply disregards all opinions by acceptable medical sources and substitutes her own opinion of how [his] mental symptoms affect his functioning when formulating the RFC." Doc. 15 at p. 3. Ralph also argues that the ALJ erred by failing to rely on the opinion of a medical expert in determining Ralph's RFC. *Id.* at p. 7.

For the same reasons stated above in addressing whether the ALJ properly assessed the medical opinions of Harnett and Nims, Section IV.A, the Court finds that the ALJ appropriately discounted the medical opinions in reaching the RFC. Moreover, the ALJ's RFC finding need not come from any one particular medical opinion, as long as there is some medical evidence to support it. *See Hensley*, 829 F.3d at 932. Consistent with the Eighth Circuit's instructions, the ALJ determined Ralph's RFC by considering "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Myers*, 721 F.3d at 527 (quoting *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000)) (alterations in original).

Here, in reaching her RFC determination, the ALJ acknowledged Ralph's "long history of depression, anxiety, and [PTSD] after deaths of multiple loved ones due to heroin overdose" and that Ralph "'expressed survivors' guilt, an avoidance of places that remind him of finding his loved ones dead, and flashbacks of those situations." Tr. 31. The ALJ also noted that Ralph's treatment records reflect that, at times, Ralph's mood is "nervous, depressed, anxious[,] and dysphoric." Tr. 32 (citing 339–353, 440, 551, 557).

Nevertheless, as explained above, the ALJ noted and the records reflect that Ralph's mental-status examinations show him alert and oriented, able to follow commands without difficulty, calm, pleasant, cooperative, acceptably groomed, engaging during conversation with good-eye contact, and having fair concentration and attention. Tr. 32 (citing Tr. 262, 267, 270, 273, 277, 282, 302, 339, 341, 343, 345, 347, 349, 351, 353, 355, 392, 436, 436, 551, 557, 590, 603). Additionally, consultative psychologist Laura Tishey examined Ralph and found that he could engage in spontaneous conversation, answer questions readily, identify the current and last three presidents, spell "world" forward and backward, perform serial threes and basic math without difficulty, recall two out of three words after a short delay and distraction, correctly interpret proverbs, and identify similarities between pairs of words. Tr. 32 (citing 389–390). Accordingly, the Court concludes that substantial evidence supports the ALJ's RFC limiting Ralph to simple, routine tasks with minimal changes in job duties and job setting, and only occasional interaction with others.

## V.     Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citing

*England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007).  Having found that substantial evidence supports the ALJ's conclusions and that the ALJ correctly applied the legal standards, this Court affirms the ALJ's decision.

Accordingly, the Court affirms the decision of the Commissioner and dismisses Ralph's [1] Complaint with prejudice.  A separate judgment will accompany this Memorandum and Order.  The Court directs the Clerk of Court to amend the case name and caption to reflect the substitution of Kilolo Kijakazi as Defendant in this suit.

So Ordered this 30th day of September 2021.

SLR.CR

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**